Raymond Hossback, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs May 12, 1983, to Judges BLATT, WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*John W. Packel,* Assistant Defender, Chief of Appeals Division, with him *Benjamin Lerner,* Defender, Defender Association of Philadelphia, for petitioner.

*Arthur R. Thomas,* Assistant Chief Counsel, with him *Robert A. Greevy,* Chief Counsel, *Jay C. Waldman,* General Counsel, and *LeRoy S. Zimmerman,* for respondent.

OPINION BY JUDGE WILLIAMS, JR., February 17, 1984:

Raymond Hossback (petitioner) petitions for review of the denial of administrative relief by the Pennsylvania Board of Probation and Parole (Board) from its order revoking his parole and recommitting him as a technical parole violator.[1]

On April 17, 1980, the petitioner, while on parole, was arrested by federal drug enforcement agents for alleged federal drug law violations. Also, on April 17, 1980, the Board lodged a detainer on him based on his arrest and on his travel outside of the area of his parole supervision. Subsequently, he was indicted on four counts with violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§801-1194. On July 15, 1980, Judge VAN ARTS-DALEN of the U.S. District Court, ruling on a pre-trial defense motion to suppress the evidence against the petitioner, held that the federal government had failed to meet its burden under the rule of *Kastigar v. United States,* 406 U.S. 441 (1972), and suppressed all of the evidence against the petitioner. Judge VAN ARTSDALEN found that under *Kastigar* the federal government could not prove that its evidence against the petitioner was not directly premised on, or indirectly derived from, testimony and interviews which the petitioner had given in 1977. The petitioner testified under a statutory grant of immunity[2] before a federal grand

---

[1] This case has a long and complex procedural history which is not necessary to detail here; however, it is important to note that the petitioner presently is not confined pending the final disposition of his petition for review under a supersedeas granted by this Court on December 1, 1980.

[2] The petitioner was granted immunity under the provisions of 18 U.S.C. §6002 which provides as follows:

> Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

jury and at a federal drug trial. He also gave interviews, under an informal grant of immunity, to agents of the Philadelphia office of the federal Drug Enforcement Agency (DEA) concerning his knowledge of nationwide illegal drug activities.

On July 18, 1980, the Board conducted a final parole revocation hearing for the petitioner at which the sole evidence was the testimony of DEA Agent Miller. Miller's testimony, to which petitioner's counsel objected, concerned the same evidence which had been suppressed by Judge VAN ARTSDALEN. The Board, on September 5, 1980, issued its order revoking the petitioner's parole and recommitting him, based on Agent Miller's testimony.

The sole question raised by the petitioner is whether the Board acted properly in revoking his parole and recommitting him on the basis of evidence which had been suppressed by the federal court because such evidence was directly premised on or indirectly derived from his immunized testimony or other information which he had supplied to the DEA.

In order to answer this question in favor of the petitioner, we would have to hold that a parole revocation proceeding is a "criminal case" because Sec-

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House.

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be uesd against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

tion 6002 is explicitly limited in its application to criminal cases. This we are precluded from doing by the unequivocal declaration of the United States Supreme Court in *Morrissey v. Brewer,* 408 U.S. 471 (1972), that the revocation of parole is not part of a criminal prosecution and that the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations.

> Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Id.* at 480. We believe that this distinction is justified by the critical differences between criminal trials and parole and probation revocation proceedings.[3] At a criminal trial the burden is on the Commonwealth to establish all of the requisite elements of the offense charged beyond a reasonable doubt, but at a revocation hearing the Commonwealth need only prove a violation of parole or probation by a preponderance of evidence, even if such evidence is inadmissible at trial. *Commonwealth v. Brown,* 281 Pa. Superior Ct. 348, 422 A.2d 203 (1980). Also, as our Supreme Court stated in *Commonwealth v. Kates,* 452 Pa. 102, 114-15, 305 A.2d 701, 708 (1973):

> At . . . trial the issue is whether the elements of the offense charged are present . . . . The focus of a probation violation hearing, even

---

[3] The United States Supreme Court equated a probation revocation proceeding with a parole revocation proceeding for the purposes of due process in *Gagnon v. Scarpelli,* 411 U.S. 778 (1973).

though prompted by a subsequent arrest, is whether the conduct of the probationer indicates that the probationer indicates that the probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct.

Therefore, we must hold that the Board did not err in basing its order revoking the petitioner's parole and recommitting him on evidence which had been suppressed for the purposes of a federal criminal trial. Accordingly, the order of the Board must be affirmed.

### ORDER

AND Now, this 17th day of February, 1984, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.