**Nathaniel BROWN, Petitioner,**

**v.**

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 31, 2002.

Decided Sept. 12, 2002.

Suzanne M. Swan, John Ciroli and M. Susan Ruffner, Pittsburgh, for petitioner.

Amy M. Elliott, Harrisburg, for respondent.

Before: COLINS, President Judge, COHN, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY President Judge COLINS.

Nathaniel Brown petitions for review of a decision of the Pennsylvania Board of Probation and Parole that denied his administrative appeal of the Board's decision to revoke his parole and sentence him to six months backtime. We reverse the Board.

Brown was serving a sentence of three to six years for possession of instruments of crime and terroristic threats and a separate sentence of three to six years for escape when he was released on parole on April 10, 2001. Upon his release, Brown began to work at two jobs in an effort to pay off his court-imposed fines and costs. On August 9, 2001 Brown became involved in an argument with his wife. He wanted to pay off his obligations to the court as quickly as possible and she wanted him to contribute more to the expenses of their household. Mrs. Brown personally reported the incident to Brown's parole officer, Timothy Wolfe, on August 10, 2001. In a statement he prepared Agent Wolfe wrote[1] that Mrs. Brown told him that Brown prevented her from leaving their apartment during the argument and that she felt that Brown "was going to hit her several times during the encounter, and feared that he will hit [her] in the future." Agent Wolfe charged Brown with a violation of condition 5c of his parole that prohibited him from engaging in "any assaultive behavior." Brown was taken into custody on August 10, 2001. Three days later, on August 13, 2001, Mrs. Brown retracted what she had said to Agent Wolfe in a lengthy, detailed, sworn affidavit filed with the Clerk of Courts of Allegheny County. In that affidavit she states that Brown did not restrain her in any way and that she never feared for her safety during the argument of August 9. She begs for forgiveness and explains that she was upset and simply wanted the Board to provide some type of marriage counseling so that she and Brown could learn to work out their differences.

A parole violation hearing was held on September 20, 2001. Mrs. Brown was the only person to testify at that hearing. In her testimony Mrs. Brown again recanted everything she had said to Agent Wolfe on August 10, 2001 about Brown's behavior on August 9. She stated again under oath that she did not think he would have hit her or hurt her in any way and that he did not prevent her from leaving the apartment. She testified that the only reason she said the things she said to Agent Wolfe was that she believed that Agent Wolfe would arrange marriage counseling for them. The Board, relying on Mrs. Brown's statement as reported by Agent Wolfe and discounting her sworn affidavit and her testimony at the hearing, revoked Brown's parole and sentenced him to six months backtime. This appeal followed.

The question we are asked to determine is whether the Board abused its discretion in finding that Brown violated his parole where the evidence presented is insufficient to support such a conclusion?[2]

---

1. This document was referred to at the hearing but was never made a part of the record. In its brief the Board says that it is Mrs. Brown's statement made "In a letter dated August 10, 2001 ..." In his brief, Brown states that "Agent Wolfe prepared a written statement ..." We assume that it was initially an oral report because, in the transcript of the hearing, Agent Wolfe refers to it as a "statement made to us on August 10, 2001."

2. Our standard of review is limited to determining whether the Board's adjudication is supported by substantial evidence, whether an error of law has been committed or whether the parolee's constitutional rights have been violated. The revocation of parole is

Revocation of parole is a discretionary act that may be overturned by this Court when it finds that the Board has acted in bad faith, fraudulently, capriciously or when it has abused its power. *Chapman v. Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 49, 484 A.2d 413 (1984). The Board acts arbitrarily, unreasonably or capriciously when substantial evidence to support its conclusion has not been presented. *Id.* at 418. We will only find that the Board made an arbitrary, capricious or unreasonable determination in the absence of substantial evidence in the record to support that determination. *Id.* Substantial evidence has been defined as evidence that a reasonable mind would find sufficient to support a conclusion. *McCauley v. Pennsylvania Board of Probation and Parole*, 98 Pa.Cmwlth. 28, 510 A.2d 877 (1986). The Board must prove a technical parole violation by a preponderance of the evidence. *Id.* at 879, *see* Pa.Code § 71.2(20); *Hossback v. Pennsylvania Board of Probation and Parole*, 80 Pa.Cmwlth. 344, 471 A.2d 186 (1984).

The Board relies on *Miller v. Pennsylvania Board of Probation and Parole*, 105 Pa.Cmwlth. 24, 522 A.2d 720 (1987) to support its determination that Mrs. Brown's prior inconsistent statement reported to the Board by Agent Wolfe is sufficient to prove that Brown committed a technical violation of his parole. Steven Miller was arrested and charged with violating section 5c of his parole[3] on the strength of a sworn statement signed under oath by his girlfriend Michelle Ward. In her sworn statement Ms. Ward alleged that Miller had struck and bit her. At Miller's revocation hearing Ms. Ward recanted her testimony; she told the Board that she made the original statement because she was angry with Miller but that she now wanted him released so that they could live together. The Board discounted her testimony at the hearing and, relying on her prior inconsistent statement, sentenced Miller to six months backtime.

We find that *Miller* can easily be distinguished from this case. In *Miller* the Board was presented with Michelle Ward's sworn statement made just after the incident with Miller and her testimony recanting that statement at the hearing before the Board. Both of these pieces of evidence appear to be substantial evidence that the Board could weigh in making its determination. In the case before us the Board is presented with Agent Wolfe's report of Mrs. Brown's statement to him, her detailed sworn affidavit filed with Clerk of Courts of Allegheny County three days after she spoke with Agent Wolfe and her sworn testimony at the revocation hearing that is entirely consistent with her earlier sworn statement. The Board tells us in its brief that the initial oral report to Agent Wolfe had "greater weight and legitimacy" than her sworn statement and later testimony. The Board is free to consider all the evidence presented to it, but its determination must rest on a foundation of substantial evidence, *Chapman.* Our review of the record reveals that Agent Wolfe's report of what he was told on August 10, 2001 pales in substance when viewed in the light of Mrs. Brown's subsequent sworn affidavit and her testi-

---

purely a function of administrative discretion; this court will interfere with the Board's exercise of its administrative discretion only where it has been abused or exercised in an arbitrary or capricious manner. *Moroz v. Pennsylvania Board of Probation and Parole*, 660 A.2d 131 (Pa.Cmwlth.1995).

3. The same prohibition against assaultive behavior that Brown was alleged to have violated.

mony before the Board. To discount the almost immediate sworn statement recanting her words to Agent Wolfe and explaining why she said what she said to him and her testimony before the Board that is consistent with that statement is to ignore what is clearly substantial evidence in favor of what is little more than hearsay. We must emphasize the fact that there is nothing in the record to support a conclusion that Brown ever struck his wife or that he threatened to strike her. Rather, the revocation of parole in this matter was based solely on the Defendant's agitated behavior during a domestic dispute. We find that the Board abused its discretion in this matter in that its determination is not based on substantial evidence.

Accordingly, we reverse the order of the Board revoking Brown's parole and sentencing him to six months backtime and order that he be released on parole forthwith.

### ORDER

AND NOW, this 12th day of September 2002, it is ordered that the order of the Pennsylvania Board of Probation and Parole in this matter dated November 14, 2001 revoking Petitioner's parole and sentencing him to six months backtime is hereby reversed. It is further ordered that he be released on parole forthwith.

DISSENTING OPINION BY Judge COHN.

Respectfully, I dissent.

On page 11 of the transcript, the following evidence regarding Ms. Brown's original statement appears:

Mr. Wolfe: (prosecuting for the Board) ... [D]id you not state that I felt he was going to hit me several times during this encounter, and feared that he will hit me in the future? And you indicated that you are afraid of him.

Ms. Brown: I was being emotional at that time.

Mr. Wolfe: But did you make that statement to us on August 10, 2001?

Ms. Brown: I thought that I had to write that down in order for you to talk to him ....

While Ms. Brown may now claim that she had other motives for making her original statement, she does not deny that she originally made it. In *Miller v. Pennsylvania Board of Probation and Parole,* 105 Pa.Cmwlth. 24, 522 A.2d 720 (1987), the issue was whether the Board of Probation and Parole (Board) erred in relying on a signed statement made under oath by the parolee's girlfriend that he struck and bit her when the girlfriend recanted her statement at the revocation hearing. In deciding whether this evidence could support the revocation, we noted that it was an out-of-court statement made under oath at a time when the parolee had no opportunity to cross-examine her as to the accuracy of the charge. We observed in *Miller,* relying on *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986), the trend to consider a prior inconsistent statement of a declarant, who is a witness in a judicial proceeding and is available for cross-examination, as substantive evidence in a later proceeding. *Miller* extended the *Brady* holding to a situation where the initial signed statement given under oath is made in the context of investigation of a possible parole violation. We also noted in the *Miller* case that there were indicia of reliability regarding the signed out-of-court statement, including the fact that it was made under oath near the time of the incident. We additionally noted the relationship of the parties and held that the motivation of the parolee's girlfriend was a proper consideration for the Board.

Here, as in *Miller*, we have a statement, made under oath, near the time of the incident and made in the context of investigating a parole violation. Under *Miller*, that statement may be considered by the Board as substantive evidence. Further, if believed, it is substantial evidence of assaultive behavior.[1] Therefore, I fail to see how the Board, in relying on it, acted in bad faith, capriciously, or with fraud as required by *Chapman v. Pennsylvania Board of Probation and Parole*, 86 Pa. Cmwlth. 49, 484 A.2d 413 (1984).

Accordingly, I would affirm its order.

---

1. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Chapman v.* *Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 49, 484 A.2d 413 (1984).