**Marvin L. PRICE, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 15, 2004.

Decided Dec. 14, 2004.

Christopher W. Huffman, Greensburg, for petitioner.

Chad L. Allensworth, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Marvin L. Price (Petitioner) petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board), which recommitted Petitioner to a state correctional institution to serve as a technical parole violator. We affirm.

Petitioner was originally sentenced in Allegheny County to an aggregate term of not less than five years to not more than ten years. (R. at 1). Petitioner's minimum sentence date for these convictions was July 17, 2001, and his maximum sentence date is July 17, 2006. *Id.*

Petitioner was paroled on July 23, 2001, to the Renewal Community Corrections Center (the Renewal Center). (R. at 9–12). One of the conditions governing his parole required Petitioner to refrain from owning or possessing any firearms or weapons. *Id.*

On October 26, 2001, when Petitioner returned to the Renewal Center, a routine search was conducted by Renewal Center security monitor Lisa Tabb (Tabb) of a book bag believed by staff of the Renewal Center to belong to Petitioner. The book bag contained a pistol. Initially, Petitioner acknowledged ownership of the book bag, but then he denied ownership by stating that he grabbed the wrong bag at school.

On that same day, the Board issued a warrant to commit and detain, and Board agents arrested Petitioner for alleged violations of parole condition 5(b), relating to possession of a weapon, and parole condition 7, relating to unsuccessful completion of the Renewal Program. (R. at 13–15, 28).

As a result of the incident, the Pittsburgh police arrested Petitioner on November 9, 2001, and charged him with receiving stolen property,[1] ownership of a gun by a former felon, and carrying a concealed weapon without a license. (R. at 18–20, 27). It appears that the charges were dismissed on October 3, 2003, due to the Commonwealth's failure to subpoena witnesses in connection with the preliminary hearing. (R. at 15, 17).

On or about January 21, 2004, a parole

---

1. The police criminal complaint reads: "[t]he actor intentionally received, retained or disposed of movable property, namely, A BOOK-BAG VALUED AT LESS THAN $50.00, belonging to MELVIN BROWN, with no intent to restore it to the owner, knowing that such property was stolen or believing that it had probably been stolen...." ' (R. at 18).

violation hearing was conducted.[2] (R. at 37–70). By decision recorded on February 2, 2004, which was mailed on February 23, 2004, the Board recommitted Petitioner as a technical parole violator and sentenced him to serve twelve months backtime for violating parole condition 5(b). (R. at 72). In reaching this determination, the Board stated that it relied upon the testimony of security monitor Tabb and parole supervisor Roberta Troy. *Id.*

Petitioner filed a timely request for administrative relief. (R. at 75–76). By decision dated April 9, 2004, the Board denied Petitioner's request for administrative relief, simply stating that "there was no reversible error during the revocation process." (R. at 77).

■ On or about May 10, 2004, Petitioner filed a petition for review with this Court. On appeal,[3] Petitioner argues that the Commonwealth failed to present substantial evidence to establish the parole violation by a preponderance of the evidence and that the Commonwealth violated Petitioner's due process rights under the United States and Pennsylvania Constitutions by failing to preserve exculpatory evidence in the form of a video surveillance tape from the Renewal Center.

■ First, we will consider Petitioner's argument that the Commonwealth failed to present substantial evidence to establish the parole violation by a preponderance of the evidence.

■ "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion of law." *Miller v. Pennsylvania Board of Probation and Parole,* 105 Pa.Cmwlth. 24, 522 A.2d 720, 721 (1987). At a parole violation hearing, the Board is required to show by a preponderance of the evidence that the parolee violated the terms and conditions of his parole. *Brown v. Pennsylvania Board of Probation and Parole,* 806 A.2d 984 (Pa.Cmwlth.2002); and *Hossback v. Pennsylvania Board of Probation and Parole,* 80 Pa.Cmwlth. 344, 471 A.2d 186 (1984). A preponderance of the evidence is "such proof as leads the factfinder ... to find that the existence of a contested fact is more probable than its nonexistence." *Sigafoos v. Pennsylvania Board of Probation and Parole,* 94 Pa. Cmwlth. 454, 503 A.2d 1076, 1079 (1986). The Board may consider all the admissible evidence presented to it, but "its determination must rest on a foundation of substantial evidence." *Brown,* 806 A.2d at 986. Moreover, it is the function of the Board, as the ultimate finder of fact, to evaluate witness credibility, resolve conflicts in the evidence and assign evidentiary weight, and these are not matters for a reviewing court. *Sigafoos.*

At the hearing, Tabb testified that on October 26, 2001, she was working at the Renewal Center as a security monitor when Petitioner returned to the facility. (R. at 43–44). As part of her job, she inspects each resident and his belongings when the resident enters the Renewal Center. (R. at 44). On that day, Petitioner entered the facility. When Tabb went to perform the inspection, there was a bag sitting on the counter. (R. at 45). Tabb testified that she checked the bag and found a weapon inside of it. She asked to whom the bag belonged, and Petitioner

---

**2.** Petitioner waived his right to a preliminary hearing in the parole violation matter. (R. at 23).

**3.** Our scope of review of a Board's recommittal order is limited to determining whether necessary findings were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Jackson v. Board of Probation and Parole,* 781 A.2d 239 (Pa.Cmwlth.2001).

said that it was his. Tabb testified as follows:

> I asked three times are you sure that this is your bag and he said yes that's my bag and I asked again are you sure this bag is yours? And he stated yes that is my bag and then he said that's not my bag, that's not my gun in the bag.

*Id.* Tabb further explained that after the fourth time she asked him, he said "yeah, that's my bag then he said wait a minute. That's not my bag, that's not my gun. I must have picked up the wrong bag." (R. at 45–46). Tabb testified that she did not show Petitioner the contents of the bag. (R. at 46).[4]

Tabb acknowledged on cross-examination that she did not remove the bag from Petitioner's person. (R. at 48). Rather, it was sitting unattended on a desk. *Id.* She could not identify Petitioner as carrying that particular bag on that day. (R. at 56). She described the bag as a "regular black backpack" without stickers or drawings on it. (R. at 49). There was no name on the bag either. (R. at 49–50). She testified that the bag also contained a little phone book that had inside of it a name tag with Petitioner's picture on it which was issued by the Renewal Center and usually used to identify who is sleeping in each bed. (R. at 52–53). She further testified that she spoke with the police regarding this matter, but she acknowledged that the police report states that Petitioner's "name was not found inside the book bag." (R. at 53). Regardless, she says that the book and name tag were inside the bag that was turned over to the police. (R. at 54). She testified that the bag also contained some papers and books, a pharmacy bottle, a parking permit and a receipt that all had the name "Marvin Brown" listed on them. (R. at 55–56).

On cross-examination, Tabb also testified that she was aware that Renewal Center made a surveillance tape, but she did not know where it was or whether it was destroyed. (R. at 54–55).

Parole supervisor Troy also testified. (R. at 58). She testified that on October 26, 2001, she was called to assist with the arrest of Petitioner. (R. at 59–60). She testified that during Petitioner's transport to a state correctional facility, she told him not to worry if the gun task force comes and the prints are not on the gun. *Id.* He responded that his prints were on the gun because Tabb let him touch the gun when she took it out of the bag. *Id.* The conversation then ceased. *Id.* Troy testified that she was not sure whether any fingerprint testing was ever done. (R. at 62–65).

As to the surveillance tape, Troy testified on cross-examination that she knew that Renewal Center has surveillance tapes, but she did not ask to see the tape. (R. at 65). She thought that Agent Warner may have viewed the tape. *Id.* She did not know whether the tape had been destroyed. (R. at 66).

Petitioner's counsel read into the record a portion of the transcript from Petitioner's preliminary hearing where a police detective stated that "no fingerprints were lifted off the gun." (R. at 67).

Petitioner did not testify or present any witnesses.

Based upon the above described evidence, we cannot say that the Board erred when it determined that Petitioner violated parole condition 5(b) by having in his pos-

---

4. On cross-examination, Tabb testified that Petitioner had been at the Renewal Center long enough to know that when he returned to the facility, he and his bag would be searched. She had previously searched a bag belonging to Petitioner. (R.R. at 47–48).

session a gun. In his brief, Petitioner questions the credibility of Tabb and Troy in an attempt to establish that the Board lacked substantial evidence to support its determination.[5] However, as noted above, the Board is the ultimate fact-finder and is charged with the responsibility of evaluating witness credibility, resolving conflicts in the evidence and assigning evidentiary weight.[6] *Sigafoos.*

■ Next, we will address Petitioner's argument that the Commonwealth violated Petitioner's due process rights under the United States and Pennsylvania Constitutions by failing to preserve exculpatory evidence in the form of a video surveillance tape from the Renewal Center. Relying on the United States Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), for the proposition that a parole offender must have the opportunity to present witnesses and documents into evidence, Petitioner makes the argument that he was entitled to present the surveillance tape as evidence and that the Board, due to its relationship with the Renewal Center, had a duty to preserve the tape. Instead, the tape was destroyed.

Petitioner's argument must fail for a variety of reasons. First, *Morrissey* does not require the Board to preserve potentially exculpatory evidence in the case at hand as suggested by Petitioner.[7] Second, Petitioner mischaracterizes the testimony presented in this matter. The testimony does not establish that the tape was viewed and destroyed. Rather, Troy testified that an agent may have viewed the tape. Tabb and Troy testified that they did not know whether the tape was destroyed. Third, there is nothing to suggest that Petitioner ever requested that he be granted access to the tape. Under these circumstances, there can be no violation of due process rights.

Accordingly, the order of the Board is hereby affirmed.

**5.** Petitioner contends that the testimony of Tabb was incredible because it does not make sense that Petitioner would have known that a gun was in the bag if Tabb did not show the contents of the bag to him. Also, Petitioner appears to argue that it does not make sense that he would try to bring a gun into the Renewal Center since he knew that his bag would be searched. Also, he points out the discrepancy between Tabb's testimony regarding the phone book and the police report that states that nothing in the bag contained Petitioner's name. He also takes the position that if his name tag was in the bag, someone could have taken it off his bed and put it there. Petitioner suggests that the evidence reveals that the bag belonged to Marvin Brown, not Petitioner. We note that there is no evidence of record whatsoever regarding Marvin Brown, or Melvin Brown, as identified in the police criminal complaint.

As to Troy, Petitioner questions her credibility by suggesting that if Petitioner had said to her that his fingerprints were on the gun, then Troy should have requested that Petitioner make a written statement to that affect and Troy should have told the police detective about the statement and testified at trial. We note that there is no evidence of record that she did not tell the detective about the statement.

**6.** Additionally, we note that Petitioner did not provide any testimony or other evidence to show that he was never in possession of the bag and gun or to explain that his possession of the items was mistaken, although he appears to argue both in his brief. His argument is based entirely on supposition and not on evidence.

**7.** In *Morrissey*, the United States Supreme Court held that minimal due process requirements for parole include a preliminary inquiry in the nature of a preliminary hearing to determine probable cause, to be conducted at or reasonably near the place of the alleged parole violation or arrest as promptly as convenient after arrest, and a revocation hearing with respect to which certain specified minimum due process requirements must be observed. *Morrissey* did not address any issues specifically relating to the preservation of potentially exculpatory evidence.

## ORDER

AND NOW, this 14th day of December, 2004, the order of the Pennsylvania Board of Probation and Parole, which recommitted Petitioner Marvin L. Price to a state correctional institution to serve as a technical parole violator, is hereby affirmed.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority concludes that the Board successfully proved by a preponderance of the evidence that Marvin L. Price (Price) violated parole condition 5(b). For the following reasons, I disagree.

The Board had the burden of proof in this case, and, to meet its burden, the Board presented the testimony of two witnesses. However, the testimony of those witnesses was internally inconsistent and contradictory. Yet, the Board denied Price's administrative appeal by simply stating, "the Board determined by a preponderance of the evidence that Mr. Price violated the conditions of his parole specified." (Board's April 9, 2004 decision.) The majority then affirmed the Board in similarly conclusive fashion, simply stating, "we cannot say that the Board erred when it determined that [Price] violated condition 5(b) by having in his possession a gun." (Majority op. at 176–77.)

I am puzzled by the Board's and the majority's failure to explain their statements. After my review of the evidence, I am left with more questions than I have answers. The majority is quite correct that the Board's role is to evaluate credibility, resolve conflicts in the evidence and assign evidentiary weight. (*See* majority op. at 177.) However, in this case, I believe that this court needs to explore further how the Board, in performing its functions, concluded that Price violated condition 5(b).

Condition 5(b) of the conditions governing Price's parole provides that Price shall "refrain" from "possessing" a firearm. (C.R. at 10.) The word "refrain" means to "keep oneself from doing" something; the word connotes "checking or inhibiting an inclination or impulse." Webster's Third New International Dictionary 1909 (1993). Moreover, "[p]ossession is [a culpable] act ... if the possessor *knowingly* procured or received the thing possessed or *was aware* of his control thereof for a sufficient period to have been able to terminate his possession." Section 301(c) of the Crimes Code, 18 Pa.C.S. § 301(c) (emphasis added). Thus, a parolee violates condition 5(b) if the parolee fails to check his inclination to knowingly control a firearm for a sufficient period of time to be able to terminate possession.

### I. Undisputed Evidence

Here, the undisputed evidence is as follows. On July 23, 2001, Price was released on parole to Renewal Community Corrections Center (Renewal CCC). (C.R. at 9.) While he resided there, Price attended the Community College of Allegheny County (Community College), studying engineering. (C.R. at 15.) Price carried his books to and from the Community College in a black backpack. (C.R. at 49, 56.) Each time Price returned to Renewal CCC from the Community College, a security monitor would search Price and his backpack. (C.R. at 44, 48.)

On October 26, 2001, Price returned to Renewal CCC with a black backpack; Price thought that the backpack was his, but this backpack actually belonged to Marvin Brown. (C.R. at 55–56.) The backpack had no identifying features on the outside, but it contained: (1) papers and books belonging to Marvin Brown; (2) a pharmacy container belonging to Marvin Brown; (3) a Community College parking

permit belonging to Marvin Brown; and (4) a receipt from the Community College belonging to Marvin Brown. (C.R. at 49, 51, 55–56.)

Lisa Tabb, the security monitor on duty, opened the backpack and saw a firearm. (C.R. at 45.) Tabb did not see Price enter Renewal CCC with the backpack, so she asked a group of residents to whom it belonged. (C.R. at 45.) Price responded that it was his, and Tabb asked if he was sure. (C.R. at 45.) Price answered in the affirmative, and Tabb repeated the question. Price again claimed ownership of the bag, but, after Tabb repeated the question another time, Price realized he was mistaken and said, "That's not my bag, that's not my gun. I must have picked up the wrong bag." (C.R. at 46.) Tabb did not examine any of the other contents of the backpack to determine whether Price actually had picked up a backpack belonging to Marvin Brown at the Community College. (C.R. at 51.)

Parole agents arrested Price for possessing a firearm. (C.R. at 14.) When Renewal CCC employees later found the property of Marvin Brown in the backpack, Renewal CCC reported the matter to police. (C.R. at 53.) Detective Gerald Watkins filed a criminal complaint against Price, charging him with receiving stolen property,[1] carrying a concealed weapon without a license and possession of a firearm by a former felon. (C.R. at 18–19.) A preliminary hearing was held, and the case went to court. (C.R. at 16.) On October 1, 2003, when Detective Watkins failed to appear in response to a Commonwealth subpoena, the Commonwealth petitioned the trial court for nolle prosse, and the petition was granted.[2] (C.R. at 17.)

I submit that, based on the undisputed evidence, the only reasonable conclusion the Board could have reached is that Price picked up the wrong backpack at the Community College without knowledge of the firearm. It is absolutely clear that: (1) the backpack belonged to Marvin Brown; (2) Price owned a similar backpack; (3) police never charged Price with theft of the backpack; (4) Price returned to Renewal CCC from the Community College with only one backpack; (5) the Board presented no evidence regarding the whereabouts of Price's own black backpack containing his school books; (6) Price knew that the security monitor at Renewal CCC would search his backpack; (7) Price made no attempt to prevent the security monitor from searching his backpack; (8) Price initially did not hesitate to assert his ownership of the backpack, but, when the security monitor persisted in asking if he was certain of his ownership, Price recognized his error and immediately stated that he must have picked up the wrong backpack; and (9) Price never acknowledged ownership of the firearm.

## II.  Other Evidence

### A.  Tabb's Testimony

In addition to the undisputed testimony, Tabb presented seemingly inconsistent

1.  It is not clear to me why Detective Watkins charged Price with receiving stolen property. If Price received stolen property, then Marvin Brown must have stolen the bag. If Detective Watkins believed that Price stole the bag from Marvin Brown, Price should have been charged with theft.

2.  I note that the majority erroneously states that the charges were dismissed for the Commonwealth's failure to subpoena witnesses in connection with the preliminary hearing. (Majority op. at 174.) However, the record shows clearly that the criminal preliminary hearing was held on January 23, 2002, and that the petition for nolle prosse was filed on October 1, 2003, after Watkins failed to appear pursuant to a subpoena. (C.R. at 16–17.)

testimony suggesting that Price had knowledge of the firearm in the backpack.

Tabb testified that "[s]omebody else" at Renewal CCC found a name tag in the backpack with Price's name and picture. (C.R. at 51–52.) However, Tabb admitted that she told the police that Price's name was *not* found inside the backpack. (C.R. at 53.) Tabb did not explain this contradiction,[3] and I cannot determine how the Board resolved this conflict. It seems likely that the Board believed "somebody" found Price's name tag in the backpack. However, because Tabb did not have personal knowledge about the discovery of the name tag, Tabb's testimony about the name tag is mere hearsay.

Moreover, even if "somebody" found Price's name tag in the bag, it would not establish that Price knew about the gun in the bag. Tabb testified that the backpack contained several pockets, including side pockets and a zippered main area, (*see* C.R. at 51), but Tabb did *not* identify which part of the backpack contained the name tag. If Price put his name tag in a side pocket on the outside of the backpack, Price would not have seen the firearm inside the zippered main area of the backpack. Thus, Tabb's testimony, by itself, does not establish that Price violated condition 5(b).

### B. Troy's Testimony

In determining that Price did violate condition 5(b), the Board also relied on the testimony of Roberta Troy, a parole supervisor who questioned Price after his arrest.

---

3. Either Tabb lied to the police, or the person who reported the discovery of the name tag to Tabb lied about it.

4. Price entered into the record specific testimony from the criminal preliminary hearing, indicating that the police checked for fingerprints and found none on the gun. (C.R. at 67.)

Troy testified that she asked Price if his fingerprints were on the gun, and Price replied that his fingerprints were on the firearm because Tabb allowed him to touch the gun when she took it out of the bag. (C.R. at 60.) Moreover, Troy admitted that a police officer testifying at Price's preliminary hearing confirmed that there were no fingerprints on the gun.[4] (C.R. at 64.) Troy did not even attempt to explain why Price would claim his fingerprints were on the gun when she knew that the police found no fingerprints on the gun.[5]

Accordingly, unlike the majority, I believe there is no evidence from which the Board could meet its burden of proving that Price knowingly possessed a firearm; therefore, I would reverse.

---

5. Although Troy also testified that, according to Price, Tabb removed the gun from the bag and allowed him to touch it, I fail to see how this testimony, even if believed, would assist the Board in meeting its burden.