J-A29019-21

2022 PA Super 112

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                : PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
RONNIE LEHMAN                   :
                                :
            Appellant           : No. 601 WDA 2021

Appeal from the PCRA Order Entered April 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003380-2018

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

DISSENTING OPINION BY BOWES, J.:        **FILED:  June 23, 2022**

This Court is tasked in the instant appeal with ascertaining and effectuating our General Assembly's intent in enacting the provisions of 18 Pa.C.S. § 5123 applicable in 2018 when Appellant possessed controlled substances at a correctional institution.  Instead, the Majority largely ignores the statute and the rules of statutory construction and opts to reach a decision based upon "the nature of parole," informed by irrelevant provisions of the Prisons and Parole Code, some of which were materially different or nonexistent at the time in question, and a purported agreement that is *dehors* the record.  In my view, proper application of the rules of statutory construction to the language of § 5123 affirms the PCRA court's conclusion

_____

[*] Retired Senior Judge assigned to the Superior Court.

that Appellant was an "inmate" at Renewal at the time he illegally possessed heroin and fentanyl there. Accordingly, I respectfully dissent.

The criminal statute at issue, section 5123, provides in significant part as follows:

> **(a) Controlled substance contraband to confined persons prohibited.--**A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any controlled substance included in Schedules I through V of the . . . Controlled Substance, Drug, Device and Cosmetic Act,1 (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution . . . .
>
> . . . .
>
> **(a.2) Possession of controlled substance contraband by inmate prohibited.--**A prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act. For purposes of this subsection, no amount shall be deemed *de minimis*.
>
> **(b) Money to inmates prohibited.--**A person commits a misdemeanor of the third degree if he gives or furnishes money to any inmate confined in a State or county correctional institution, provided notice of this prohibition is adequately posted at the institution. . . .
>
> **(c) Contraband other than controlled substance.--**A person commits a misdemeanor of the first degree if he sells, gives or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit

- 2 -

of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any kind of spirituous or fermented liquor, medicine or poison (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution. . . .

**(c.1) Telecommunication devices to inmates prohibited.--**A person commits a misdemeanor of the first degree if, without the written permission of superintendent, warden or otherwise authorized individual in charge of a correctional institution, prison, jail, detention facility or mental hospital, he sells, gives or furnishes to any inmate in a correctional institution, prison, jail, detention facility or mental hospital, or any building appurtenant thereto, or puts in any place where it may be obtained by an inmate of a correctional institution, prison, jail, detention facility or mental hospital, any telecommunication device.

**(c.2) Possession of telecommunication devices by inmates prohibited.--**An inmate in a correctional institution, prison, jail, detention facility or mental hospital, or any building appurtenant thereto, commits a misdemeanor of the first degree if he has in his possession any telecommunication device without the written permission of the superintendent, warden or otherwise authorized individual in charge of a correctional institution, prison, jail, detention facility or mental hospital.

. . . .

**(e) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

"Inmate."  A male or female offender who is committed to, under sentence to or confined in a penal or correctional institution.

18 Pa.C.S. § 5123.

Appellant was convicted for violating subsection (a.2) of the statute prohibiting "inmates" and "prisoners" from possessing or controlling any amount of a controlled substance.  The term "prisoner" is not defined in the statute, but I agree with the Majority's assessment that said term is not

- 3 -

implicated in this case. Consequently, the issue is whether Appellant was an inmate: "A male or female offender who [was] committed to, under sentence to or confined in a penal or correctional institution" when he possessed heroin and fentanyl at Renewal. 18 Pa.C.S. § 5123(e).

Renewal is a "community corrections center." *See Price v. Pennsylvania Bd. of Prob. & Parole*, 863 A.2d 173, 174 (Pa.Cmwlth. 2004). Our legislature has defined a "community corrections center" as "[a] residential program that is supervised and operated by the department in accordance with" Chapter 50 of the Prisons and Parole Code. 61 Pa.C.S. § 5001. That chapter is contained in Part III of the Prisons and Parole Code, which is entitled "Inmate Confinement," among chapters governing inmate labor, visitation, and Pennsylvania's execution procedure and method. As such, the Majority aptly concludes that "Renewal indisputably qualifies as a correctional institution." Majority Opinion at 6.

Therefore, the only question that remains to be answered is whether Appellant was "committed to, under sentence to or confined in" Renewal when he possessed the contraband. The following well-established legal principles govern this determination. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute is the best indicator of the legislature's intent. To ascertain the plain meaning, we consider the operative statutory language in context and give words and

- 4 -

phrases their common and approved usage." ***Commonwealth v. Chesapeake Energy Corp.***, 247 A.3d 934, 942 (Pa. 2021). While penal statutes such as § 5123 must be strictly construed, "this principle does not require that our Court give the words of a statute their narrowest possible meaning, nor does it override the general principle that the words of a statute must be construed according to their common and approved usage." ***Commonwealth v. Hart***, 28 A.3d 898, 908 (Pa. 2011) (cleaned up).

This Court must "interpret statutory language not in isolation, but with reference to the context in which it appears." ***Commonwealth v. Kingston***, 143 A.3d 917, 922 (Pa. 2016). This context includes the titles of headings, parts, and sections which our legislature has used in organizing the statute. ***See*** 1 Pa.C.S. § 1924. ("The title and preamble of a statute may be considered in the construction thereof. . . . The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof.").

We must give effect and ascribe meaning to each word and provision chosen by our legislature, assuming none is mere surplusage. ***See***, ***e.g.***, ***Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020) ("Some meaning must be ascribed to every word in a statute . . . and there is a presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Finally, we bear in mind our legislature's instruction

that the provisions of the Crimes Code must "be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in [Title 18] and the special purposes of the particular provision involved." 18 Pa.C.S. § 105.

Our Supreme Court has observed that the fair import of § 5123 "is that there are certain places where it is impermissible to bring certain enumerated substances." **Commonwealth v. Williams**, 579 A.2d 869, 871 (Pa. 1990). Namely, the places are "1.) any prison; 2.) any mental hospital; 3.) any building appurtenant to a prison or mental hospital; and 4.) land granted to or owned or leased by the Commonwealth or county for the use and benefit of prisoners or inmates." **Id**.

During the time at issue in the case *sub judice*, community correction centers housed not only parolees in good standing, but also offenders serving state intermediate punishment, offenders who had been granted clemency, and parolees detained or recommitted for technical violations. **See** 61 Pa.C.S. § 5003 (effective January 2, 2013 to June 29, 2021).[1] Indeed, the Majority recognizes that parolees may reside in community correction centers

---

[1] Currently, only parolees in good standing or who are detained or awaiting recommitment for technical violations are authorized to be housed in community corrections facilities. **See** 61 Pa.C.S. § 5003(a) (effective June 20, 2021).

alongside prerelease inmates in need of drug treatment who are undeniably in official detention at the facility. *See* Majority Opinion at 7.

Thus, it is utterly reasonable to infer that in 2018, correctional centers such as Renewal were among the "certain places" for which our legislature intended to impose special contraband rules. Nonetheless, Appellant argues, and the Majority holds, that while the prerelease inmates at the Renewal corrections facility may have been subject to prosecution under § 5123(a.2) for possessing controlled substances there, Appellant was not because he was considered to be "at liberty on parole" while he resided among those inmates.

Appellant contends that he was "presumed to be at 'liberty on parole'" while he was a resident at Renewal unless the presumption was rebutted by evidence that the Renewal was so restrictive that it was "a prison equivalent." *Id*. at 11 (cleaned up) (quoting *Cox v. Com., Bd. of Prob. & Parole*, 493 A.2d 680, 681 (Pa. 1985)). Appellant asserts that the Commonwealth Court has held, in the context of determining whether parolees are entitled to credit for time spent residing in halfway houses, that Renewal is "physically constructed in ways that this Court has held, on numerous occasions, are unlike prisons." *Id*. (quoting *Harden v. Pennsylvania Bd. of Prob. & Parole*, 980 A.2d 691, 699 (Pa.Cmwlth. 2009) (noting that "[f]acilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from

leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving").

Appellant further observes that our sister Court has likewise distinguished between parolees on supervision and pre-release inmates on leave for treatment residing at the same place when determining whether the individual can receive time credit or be guilty of the crime of escape from the facility. *Id*. at 11-12 (citing ***Meehan v. Pennsylvania Bd. of Prob. & Parole***, 808 A.2d 313, 317 (Pa.Cmwlth. 2002)). Appellant suggests that, because the Commonwealth failed to proffer evidence that would have established that he was entitled to credit for his time served at Renewal and could have been charged with escape for absconding therefrom, the evidence was insufficient to prove that he was an inmate or prisoner at Renewal for purposes of § 5123(a.2).

In my view, the Commonwealth properly observes that whether Appellant was "at liberty on parole" for purposes of time credit is irrelevant to the issue of his status as an inmate under § 5123(a.2). ***See*** Commonwealth's brief at 12. I agree with the Commonwealth that, by the plain language of the statute, Appellant, as a resident assigned to a corrections facility, was an inmate there for purposes of the contraband statute. [2] *Id*. at 7, 15-16.

_____

[2] The Majority repeatedly cites 61 Pa.C.S. § 6138(2.3) to demonstrate that Appellant was "at liberty on parole" rather than an "inmate" while he was at Renewal in 2018. ***See*** Majority Opinion at 1 n.1., 7. However, that statutory

Whether the conditions Appellant personally experienced at Renewal were sufficiently prison-like to entitle him to credit for the time he served there is of no moment, as the purposes for the contraband statute and those governing time credit are distinct. Regarding the latter, the General Assembly has provided:

> Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760. "Pennsylvania appellate courts consistently have interpreted section 9760's reference to 'custody' as **confinement in** prison or another institution." *Commonwealth. v. Martz*, 42 A.3d 1142, 1145 (Pa.Super. 2012) (quoting *Commonwealth v. Maxwell*, 932 A.2d 941, 944 (Pa.Super.2007) (emphasis added)). Section 5123 is not so limited. Our legislature expressly provided that an inmate for purposes of § 5123 is not

---

provision did not exist in 2018. Subsection (2.3) was added to § 6138, a statute governing when the Board may revoke parole for violation of the attendant terms, in June 2021. The only references to "at liberty on parole" in the version of § 6138 applicable in 2018 were in subsections (2) and (2.1), which provided that a parole violator recommitted to serve the remainder of his sentence was entitled to no credit for time at liberty on parole, but that the Board could award such time credit at its discretion. *See* 61 Pa.C.S. § 6138 (effective January 2, 2013 to December 17, 2019). In any event, I fail to see what pertinence a statute governing when and if parolees are entitled to time credit has to a criminal statute designed to impose zero tolerance on possession of drugs at correctional institutions.

only a person "confined in" a penal institution, but also those "committed to" or "under sentence to" any correctional institution. 18 Pa.C.S. § 5123(e). This Court must presume that "committed to" and "under sentence to" each has a meaning distinct from "confined in."[3] Hence, even if residents at Renewal were not sufficiently "confined" to be considered "in custody" such that they were entitled to the same credit against their maximum sentences as those who are not at liberty on parole, that does not *ipso facto* mean they were not inmates for the purposes of § 5123. The question remains whether Appellant met the definition of inmate supplied by our legislature in that he was "committed to" Renewal when he possessed heroin and fentanyl there.

The foundation of the Majority's determination that he did not is an unduly narrow definition of the term "commit" and the terms of a parole agreement that is to be found nowhere in the certified record. **See** Majority Opinion at 7-10. Specifically, the Majority raises and employs an argument never proffered by Appellant that is based upon Pennsylvania Code provisions generally applicable to parole agreements and an inmate's need to consent to its terms. The Majority, without any authority for support, indicates that parolees "may only reside at Renewal or any community corrections center pursuant to a parole agreement[.]" **Id**. at 9. It observes that Appellant had

---

[3] Similarly, this Court must presume that our legislature intended "prisoner," a term not defined in the statute, to have a meaning distinct from "inmate." However, because I conclude that Appellant fell within the express definition of "inmate," I need not explore the separate meaning of "prisoner."

the option of rejecting any such agreement, which we must assume that he signed given its absence from the certified record, and electing to stay in the state correctional institution instead. *Id*. at 10.

The Majority further cities Black's Law Dictionary definition of "commit," namely: "To send (a person) to prison or to a mental health facility, esp. by court order." *Id*. at 7 n.5 (quoting COMMIT, Black's Law Dictionary (11th ed. 2019)). It then leaps to the conclusion that a person cannot be "committed to" a place if he has consented to go there. *Id*. at 7 n.5. Therefore, the Majority opines, the term "committed to" in § 5123(e) "necessarily refers to a class of offenders held or incarcerated in correctional facilities against their will." *Id*. at 7. Since Appellant was not at Renewal against his will, the Majority rules that he cannot be considered an inmate for purposes of § 5123(a.2).

I first observe that we have no idea what conditions or constraints governed Appellant's residency at Renewal. Not only did he fail to make his agreement part of the record in this case, but he does not even allude to any of the terms in his brief. Appellant's arguments before this Court have no basis in parole agreements, generally speaking or in his case in particular. I reject the Majority's unwarranted advocacy on behalf of Appellant and its consideration of fact-based matters not included in the certified record. *See*, *e.g.*, *Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa.Super. 2017) ("This Court will not act as counsel and will not develop arguments on behalf

of an appellant."); ***Commonwealth v. Greer***, 866 A.2d 433, 435 n.2 (Pa.Super. 2005) ("Factual allegations, *de hors* the record, cannot be considered by a reviewing court[.]" (cleaned up)).  Instead, I would decide the issue based upon the record and contentions presented by the parties.[4]

As noted above, Black's Law Dictionary defines "commit" to mean as follows:  "To send (a person) to prison or to a mental health facility, esp. by court order."  COMMIT, Black's Law Dictionary (11th ed. 2019).  Nothing in that definition warrants inclusion of the lack-of-volition limitation that the Majority ascribes to it.  Indeed, Merriam-Webster offers a consistent but more comprehensive definition that even more clearly shows that a commitment is not necessarily involuntary:

a: to put into charge or trust : ENTRUST

_____

[4] The Majority indicates that my observation that it is articulating arguments not proffered by Appellant "ignores . . . that in the direct appeal, two of the three judges on the panel questioned whether it was proper to assume that parolees residing in halfway houses were 'inmates'" and that, since those judges lacked authority to decide the issue then, it is doing so now since Appellant's "PCRA petition arose directly from that concern."  Majority Opinion at 14-15 n.9.  I am fully mindful of the history of this case and Appellant's good fortune in having this appeal assigned to a panel including those two judges.  However, I fail to see why the fact that the Majority began its *sua sponte* advocacy on Appellant's behalf in a prior appeal renders the continuation of that practice allowable or appropriate.  Simply put, Appellant has never claimed that the terms of his parole agreement place him outside of the statutory definition of inmate.  Nor has he ever entered that agreement into evidence, or mentioned any of its terms, in attempting to meet his burden of proving an entitlement to PCRA relief.  Yet the Majority chooses to reverse the PCRA court based upon the assumed terms of this agreement.  In my view, the Majority fails to justify its decision to do so instead of limiting itself to the certified record and the arguments of Appellant.

b: to place in a prison or mental institution

c: to consign or record for preservation

d: to put into a place for disposal or safekeeping

e: to refer (something, such as a legislative bill) to a committee for consideration and report

https://www.merriam-webster.com/dictionary/commit (definition 3) (last visited May 6, 2022).

The Majority blatantly ignores that the common usage of the term "commit" includes a person's voluntary, consensual entrustment of himself to a place or a cause. The Black's Law Dictionary definition neither includes or excludes consensual commitment. Indeed, the law has long recognized the voluntary commitment of a person to an institution. *See*, *e.g.*, *Brown v. End Zone, Inc.*, 259 A.3d 473, 480 (Pa.Super. 2021) (discussing the appellee's "voluntary commitment into a mental health institution"); *Commonwealth v. C.B.*, 452 A.2d 1372, 1373 (Pa.Super. 1982) (referencing a defendant who "voluntarily committed himself" to a state hospital for inpatient treatment pursuant to 50 P.S. § 7203).

The entrustment-focused definition quoted above is wholly in keeping with this Court's construction of the term in the only other published decision concerning § 5123's definition of inmate. In *Commonwealth v. Cornelius*, 180 A.3d 1256 (Pa.Super. 2018), the appellant was arrested for a parole violation, and was taken to the Warren County Jail. While being processed at the jail, it was discovered that he was wearing shorts that had a baggie of

- 13 -

methamphetamine sewn into the material. As a result, he was charged with and convicted pursuant to § 5123(a.2). On appeal, he argued that he did not fit the definition of inmate because he was at home at the time that he came into possession of the contraband. This Court rejected the argument as follows:

> It is undisputed that [the a]ppellant was arrested for a parole violation, transported, and surrendered to the custody of the staff at the Warren County Jail. Once his intake processing began, [the a]ppellant was committed to the custody of the Warren County Jail. Accordingly, that is when he first became an inmate of the jail as defined under subsection 5123(e). At that time, [the a]ppellant was still wearing his methamphetamine-lined shorts, and thus had a controlled substance on his person.

*Id*. at 1260. Stated differently, the appellant in *Cornelius* became an "inmate" for purposes of § 5123 at the time that he was entrusted to the custody of the correctional institution, or placed with its staff for disposition or safekeeping.[5,6]

---

[5] I observe that the *Cornelius* Court's focus on custody for purposes of the "committed to" aspect of § 5123's inmate definition is consistent with our administrative code, which defines an "inmate" as "[a] person committed to the custody of **or** confined by the Department [of Corrections]." 37 Pa. Code § 91.1 (emphasis added). I further note that construing "committed to" to mean "entrusted to" is also consistent with our obligation to assume that our legislature meant each term within § 5123(e) to have a distinct meaning. *See*, *e.g.*, *Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020). The Majority fails to consider whether its "sent involuntary" definition rendered "committed to" superfluous of the terms "under sentence to" and "confined in."

[6] The Majority states that the *Cornelius* decision is "unavailing" because it "speaks to points of law that are not now at issue." Majority Opinion at 12.

Here, Appellant was not paroled to his home, but rather placed at Renewal by the Board for safekeeping, and entrusted to Renewal as a condition of his parole. When Appellant accepted parole, the Board sent him to Renewal, a correctional institution. In other words, when Appellant opted to agree to the conditions of his parole, he voluntarily committed himself to a correctional institution.

Consequently, pursuant to the plain meaning of § 5123(e),[7] Appellant was an "inmate" at Renewal Center on March 5, 2018, when he was found there with heroin and fentanyl on his person. There is no dispute that heroin and fentanyl are unlawful controlled substances. Hence, the evidence was sufficient to sustain Appellant's contraband conviction pursuant to § 5123(a.2). As a result, Appellant's claim that his trial and appellate counsel

_____

Not only does **Cornelius** squarely address the precise issue before us, namely the meaning to the term "committed to" in § 5123(e), but it is the only precedent that does so. The fact that the Majority finds it irrelevant is further indication that it is deciding the issue it wants to decide, not actually construing the terms of the implicated statute.

[7] The Majority suggests that if a valid interpretation of the term "committed to" includes anything other than an involuntary commitment, then the term is ambiguous and the Rule of Lenity applies to require adoption of the strictest construction of the term. **See** Majority Opinion at 12. However, as I noted *supra*, the mandate of strict construction of penal statutes "does not require that our Court give the words of a statute their narrowest possible meaning, nor does it override the general principle that the words of a statute must be construed according to their common and approved usage." **Commonwealth v. Hart**, 28 A.3d 898, 908 (Pa. 2011) (cleaned up). Since the plain and common usage of the term "commit" includes voluntary commitment, the statute is not ambiguous and the Rule of Lenity is inapplicable.

were ineffective for not challenging the sufficiency of the evidence to establish the "inmate" element of the offense lacks merit.  Counsel cannot be deemed ineffective for failing to raise this claim.  ***See***, ***e.g.***, ***Commonwealth v. Hannibal***, 156 A.3d 197, 217 (Pa. 2016) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").  Accordingly, I would hold that the PCRA court did not err in dismissing his PCRA petition.[8]

For these reasons, I respectfully dissent.

_____

[8] The Majority holds that the claim has arguable merit, and, it would seem, that Appellant was prejudiced by counsel's failure to raise it on direct appeal. ***See*** Majority Opinion at 10 (indicating that there is a reasonable likelihood that counsel would have prevailed in challenging the sufficiency of the evidence based upon Appellant not being an inmate).  The Majority indicates that, therefore, the order dismissing Appellant's claim of ineffective assistance of counsel "cannot stand," vacates it, and remands the case. ***Id***. at 2, 15. The Majority offers no instructions to the PCRA court about what should happen after remand.  I assume that the Majority intends that the PCRA court hold a hearing to determine whether counsel had a reasonable basis for failing to pursue the claim. ***See***, ***e.g.***, ***Commonwealth v. Postie***, 200 A.3d 1015, 1023 (Pa.Super. 2018) ("Generally, an evidentiary hearing on counsel's strategy is preferred before the PCRA court decides if counsel lacked a reasonable basis for his actions, except in those cases where the reasons for counsel's conduct are clear and apparent from the record.").